The opinion of the court was delivered by
Spencer, J.
Mrs. Felicie Burthe, widow of Louis Frederick Foucher, Marquis de Cireé, died in France, November 22, 1877, without forced heirs, leaving an olographic will.
Her father had five children, to wit: herself and four brothers, Edmond, Henry, Leonce A., and Victor. These four brothers died before her, leaving children as follows :
Edmond, one child; Henry, two ohildren; Leonce, four children ; Victor, four children.
George Burthe, one of the children of Victor, died also before the testatrix, leaving six minor children who, through their mother as tutrix, are the plaintiffs in this cause.
Another of the sons of Victor, to wit, Emmanuel, died before the testatrix, leaving two children.
The contest before us grows out of the interpretation of the following clause in the will of Mrs. Foucher, Marquis de Circe :

“J’institue pour mes legataires universels conjointement les enfants de mes quatre f reres décédós, et á leur defaut leur descendants, par poi'tion égale dans chaqué branche.”

“ I institute for my universal legatees, conjointly, the children of my four deceased brothers, and in their default their descendants, by equal portion in each branch.”
As we have seen, these four deceased brothers left among them eleven children, two of whom were dead before the testatrix.
The plaintiffs contend that the estate must be divided in eleven equal portions corresponding to the number of the four deceased brothers’ children — that these eleven children were the legatees to whom was given, conjointly, the estate of the testatrix. That in default of any of *569 these legatees, then to their descendants “by equal portion in each branch.” The defendants contend that the estate must be divided into four equal parts, corresponding to the four deceased brothers, and that one part, or one fourth, of the estate must go to the children or descendants of the brother Edmond, one part or fourth to those of the brother Henry, one part or fourth to those of the brother Leonce, and one part or fourth to those of the brother Yictor. So that as Yictor left four children, each of them would receive only one sixteenth, and as George, the father of plaintiffs, was one of Yictor’s four children, plaintiffs, as representing George, are entitled to 1-16 instead of 1-11, as claimed by them. The estate exceeds half a million of dollars in amount.
It will be seen that.under the theory of defendants, the will did not alter the legal order of descent, but distributed the estate just as the law would have done.
There are some elementary rules for the interpretation of wills which should be kept in mind, of which the following are pertinent to this case:
First — It is the intention of the testator which should be sought, and this should be deduced primarily, if possible, from the will itself, without resort to extrinsic circumstances.
Second — “ If, from the terms made use of by the testator, his intention can not be ascertained, recourse must be had to all circumstances which may aid in the discovery of his intention.” R. O. 0.1715.
This right of resorting to extrinsic evidence, is not limited to cases of “ ambiguity or obscurity in tho description of the legatee,” for that is provided for in R. 0. 0.1714; nor to the ascertainment of “ what the thing was, which the testator intended to bequeath,” for that is provided for by art. 1716 R. 0. 0. We see no reason to doubt that the rule of art. 1715 would extend to the case where there was ambiguity or obscurity, as to the quantum or portion of a legatee, as well as to the case where there is doubt as to sense in which words are used by the testator. The article is general and absolute, and makes no distinction between latent and patent ambiguities; but authorizes the court to resort “to all circumstances” which may throw light upon the matter, “when from the terms used by the testator Ms intention can not be ascertained.”
Such seems, also, to be the rule at common law, where much greater strictness has prevailed on this subject. Wigram on Wills, proposition Y, p. 155, thus states the rule ;
“For the purpose of determining the object of a testator’s bounty, or the subject of disposition, or the quantity of interest intended to be given by his will, a court may inquire into every material fact relating to the person who claims to be interested under the will, and to the property which is claimed as the subject of disposition, and to the eir *570 eumstances of the testator and of his family and affairs, for the purpose of enabling the court to identify the person or thiDg intended by the testator, or to determine the quantity of interest he has given by his will.”
“ The legitimate effect of circumstantial evidence, in cases in which the quantity of interest given by the will is the point in dispute, is not perhaps so well defined as in the cases which have already been stated. The proposition, however, that such evidence is admissible where the quantity of interest is the point in dispute, is certain.”
“ This proves in the clearest manner the right of a court of law, where the estate or quantity of interest disposed of by a testator is in dispute, to look out of the will and be guided in the construction of it by the effect (if any) which the circumstances of -the case may have upon it.”
Third — Another important rule is, that in case of doubt, that interpretation should be preferred which will approximate closest to the legiil order of distribution. This rule flows from the general principio that the law favors the distribution which it itself provides, and gives effect to the will of' man only when that will is clearly expressed or fairly deducible.
In Lyon vs. Acker, 33 Connect, p. 229, the court says : “ It is a sound rule when a devise or legacy is given to heirs or their representatives for courts to apply the general principles governing the descent of estates, unless a contrary intention appears. The statute of distribution governs in all cases where there is no will; and where there is one, and the testator’s intention is in doubt, the statute is a safe guide.”
In Menton’s appeal, 4 Wright Pa. 111, the court says : “ When we find a man distributing his estate in whole or in part among his next of kin, and he leaves the proportions in which they are to take in doubt, it is quite natural for us to suppose that he had that statutory or customary form of distribution in his mind, and to interpret his will accordingly.”
In Clarke vs. Lynch, 46 Barbour 73, the court says : “ In construing • wills, the courts take notice of the natural relations in which the testator stands to the objects of his bounty, and the mode in which the law would dispose of the estate in case he had died without indicating his purposes; and thus they will interpret the will by these considerations and legal dispositions, unless such interpretation should be overcome by extrinsic facts clearly existing and obvious to the mind of the testator, or by the explicit and unmistakable terms of the will.”
In Fissel’s appeal, 3 Casey 27, Pa. State 55, the court says : “ In construing such devises we can not reject the legal and customary principles governing the descent of estates; and, according to them, *571 distribution goes by classes. And this must be presumed to be the-intention of testators generally, unless the contrary appear, for all are-supposed to assent to the general justice of the law on this subject.. This is only another form of the rule that in doubtful cases the claim of' the heir shall have preference.”
“ Quia in dubiis testator videtur se conformare cum. legis dispositioneet ad earn se ref erre.”
Our first and primary duty therefore is to ascertain whether “from, the terms made use of hy the testatrix,” her intention, as to the mode-of distribution, and the quantum of interest, can be ascertained with reasonable certainty. The real difficulty is to determine to what does-the words “ each branch” refer and qualify ? Do they refer to the “ children” or to the “ four brothers ?” In other words, is each child a- “ branch,” or is each brother? It depends upon the standpoint taken,, and from which the question is viewed. Thus, viewed from the standpoint of the common ancestor, Dominique Burthe, each brother would be, in legal parlance, a “ branch,” while in respect to their descendants, each of these brothers would be a “root.” So that, admitting, as contended by plaintiff’s counsel, that the term “branch” has a fixed legal-signification not to be disregarded, the doubt still remains, and is not relieved, as to whether the testatrix had in her mind and viewed the kinsmen from the one or the other standpoint. If she intended to speak of her brothers as branches of her father’s family, then defendant’s interpretation must prevail. If she intended to speak of the children as-branches of her brother’s families, then plaintiff’s views are correct. Grammatical rules will perhaps admit of either construction being given.. Weincline to think that thefaetthat the testatrix has specified the number of her brothers, instead of the number of their children, indicates. that it was her intention to make that number the dominant factor in the distribution. This conclusion finds support in the third rule above stated, and is more conformed to the legal order of distribution than would be the plaintiff’s theory.
The judge a quo held that there was doubt and ambiguity in the-disposition, and he admitted extrinsic evidence to assist in ascertaining the intentions of the .testatrix. We are not prepared to say that he erred. Both interpretations, that of plaintiff’s and that of defendant’s, when deduced from and predicated upon the terms of the icill alone, are to say the least questionable and doubtful, arising from ambiguous expressions in the will.
If we resort to this extrinsic evidence, there no longer remains a doubt as to the correctness of defendant’s construction.
That evidence consists largely of the writings of the testatrix, proven to be genuine. She, during her life, and not many years before her *572 death, divided out among these “ children of her four deceased brothers,” a large amount of funds, proceeding from the sales of property in New Orleans. Writing to one of these nephews (her agent) she says : “ Mon intention est de vous partager ma portion' de l’heritage de mes parents, qui ne m’est plus necessaire, et cela des aujourd’hui, et non au jour de ma mort, ce qui ne pourrait pas vous manquer. A partir de ce moment done, je vous abandonne a vous, mes neveux, les fils de mes quatre chers freres qui n’existent plus, toute ma part dans la succession de mon pere et de ma mere ; ainsi £ pour la branche de Leonce ; £ pour la branche de Yietor ; £ pour toi qui representes seul la branche d’Edmond, et £ pour la branche d’Henry. Ceci est bien posé.”
We have here her distinct avowal that she is doing this as a sort of advance upon what could not fail them when she was dead. We also see that the “ branches” she had in her mind were her four brothers. Other letters on this subject refer to her brothers as the branches. She speaks of “ the branch” in which there are “ four members,” etc. — "two members,” etc.
Finally, a paper, proven to be in her own handwriting, was found among her effects, and is produced, in which she explains the dispositions of her will, and from which it is clear that she intended to give the family of each of her four brothers one fourth of her estate.
The judgment below so decreed. It is correct, and is affirmed with costs.